GROSS, J.
M.D. appeals his conviction of carrying a concealed weapon pursuant to section 790.01, Florida Statutes (2001). We reverse because we find that the small wooden bat found in his car was not a “weapon” within the meaning of section 790.01(1).
Officer Francisco Ortiz stopped M.D.’s car for speeding. Believing that M.D. *526 might have been driving under the influence, the officer asked him to step out of the car. The officer then observed a 1.5 foot long “small wooden bat”[1] wedged into the floor crevice between the driver’s door and the driver’s seat. At no time during the traffic stop did M.D. hold or wield the bat.
The issue in this case is whether the small bat was a weapon within the meaning of section 790.01(1). As it is used in Chapter 790, the term “weapon”
means any dirk, metallic knuckles, slungshot, billie, tear gas gun, chemical weapon or device, or other deadly weapon except a firearm or a common pocketknife.
§ 790.001(13), Fla. Stat. (2001). This definition is “based on the description of ‘weapon’ found in the precursor statute, section 790.01, which was enacted in 1901.” Bunkley v. State, 833 So.2d 739, 743 (Fla. 2002), judgment vacated on other grounds by, 538 U.S. 835, 123 S.Ct. 2020, 155 L.Ed.2d 1046 (2003). As the second district has written, the list of weapons in section 790.001(13)
has evolved from its first appearance at the turn of the century in the Laws of Florida as a list of prohibited concealed weapons. The original catch-all phrase was “other weapon.” Ch. 4929, Laws of Fla. (1901). When the legislature revised chapter 790 in 1969, it added the requirement that the “other weapon” be a “deadly” weapon. Ch. 69-306, § 1 at 1104, Laws of Fla.
Mitchell v. State, 698 So.2d 555, 559 n. 3 (Fla. 2d DCA 1997).
The small bat does not qualify as a “deadly weapon” under the statute “because there was no evidence that it was ‘normally dangerous or deadly when used in its ordinary and usual manner.’ ” Hutchinson v. State, 816 So.2d 1186, 1187 (Fla. 2d DCA 2002) (quoting Mitchell, 698 So.2d at 557). In Garcia v. State, 789 So.2d 1059, 1061 (Fla. 4th DCA 2001), we held that whether a kitchen knife was a “deadly weapon” within the meaning of section 790.001(13) was a question of fact depending upon the particular knife involved and the circumstances surrounding the accused’s carrying of it. See Nystrom v. State, 777 So.2d 1013, 1014-15 (Fla. 2d DCA 2000); Mitchell, 698 So.2d at 560 (observing that under the definition of “dangerous weapon,” “a weapon may be deadly based on the threat of its use in a way likely to cause great bodily harm”) (emphasis in original). Here, there was no evidence that M.D. used, carried, or wielded the bat in any way.
Only if the small bat could be characterized as a “billie” would it fall within the statutory definition.[2]
Chapter 790 does not define “bil-lie.” When a statute fails to define a term, a court may resort to a dictionary definition to ascertain the term’s plain and ordinary meaning. See Francis v. State, 808 So.2d 110, 138 (Fla.2001). A “billy” is defined by the American Heritage Dictio *527 nary as “[a] billy club.” American Heritage College Dictionary 137 (3d ed. 1993). A “billy club” is “[a] short wooden club, esp. a police officer’s club.” Id. Similarly, Webster’s Third New International Dictionary defines “billy” as “a heavy usu. wooden weapon for delivering blows: club; esp.: a policeman’s club.” People v. Fink, 91 Ill.2d 237, 62 Ill.Dec. 935, 437 N.E.2d 623, 625 (1982) (quoting WebsteR’s Third New WoRld Int’l Dictionary 216 (1971)).
These definitions are consistent with the “almost universal ]” definition of a “billy” as a “policeman’s club” or “truncheon.” In the Interest of Doe, 10 HawApp. 404, 876 P.2d 1348, 1350 (1994). The Florida Supreme Court intended this meaning of the word “billy” when it wrote that the town marshal of Graceville “struck the deceased over the head with his ‘billy’ before shooting him with a pistol.” Teal v. State, 119 Fla. 394, 161 So. 422, 422 (1935). While finding that a “policeman’s nightstick or billy club” was clearly a “billy” within the meaning of the New York Penal Law, one court “strictly interpreted” the term “to mean a heavy wooden stick with a handle grip which, from its appearance, is designed to be used to strike an individual and not for other lawful purposes.” People v. Talbert, 107 A.D.2d 842, 484 N.Y.S.2d 680, 682 (N.Y.App.Div.1985).
The statutory rule of lenity supports such a narrow interpretation of the term “billy.” The legislature has stated that criminal statutes “shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.” § 775.021(1), Fla. Stat. (2001). The plain and ordinary meaning of “billie” does not include a small baseball bat, which could also be a souvenir from a professional baseball game or a children’s toy. The bat is not designed to be used only to strike a person.
REVERSED.
WARNER and KLEIN, JJ., concur.

. At trial, the two officers who testified characterized the bat as a "small wooden bat,” "small little bat,” "billy stick,” "billy bat,” and a "billy club.”

. The small bat is not a "dirk,” which is a type of dagger. See Miller v. State, 421 So.2d 746, 747 n. 1 (Fla. 4th DCA 1982) (stating that " 'dirk' and 'dagger,' are used synonymously and consist of any straight stabbing weapon, as a dirk, stiletto, etc.”); Evans v. State, 703 So.2d 1201, 1202 (Fla. 1st DCA 1997) (holding that a claw-type artificial hand did not qualify as a "dirk”).